NAME Jason Hurtado

PRISON IDENTIFICATION/BOOKING NO. AG9310   PRO PER

ADDRESS OR PLACE OF CONFINEMENT Ironwood St Prison   P.O. Box 2199

Blythe, CA   92226

Note:   It is your responsibility to notify the Clerk of Court in writing of any change of address. If represented by an attorney, provide his name, address, telephone and facsimile numbers, and e-mail address.

*ORIGINAL*

Related DDS

FILED
CLERK, U.S. DISTRICT COURT
OCT 17 2014
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

FEE DUE

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

FULL NAME (Include name under which you were convicted) Jason Hurtado

Petitioner,

v.

NAME OF WARDEN, SUPERINTENDENT, JAILOR OR AUTHORIZED PERSON HAVING CUSTODY OF PETITIONER David B. Long

Respondent.

CASE NUMBER:

CV **CV14-08068 GW(PJW)**

To be supplied by the Clerk of the United States District Court

☐ _____ AMENDED

**PETITION FOR WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY**
28 U.S.C. § 2254

PLACE/COUNTY OF CONVICTION Los Angeles

PREVIOUSLY FILED, RELATED CASES IN THIS DISTRICT COURT
(List by case number)

CV CV 14-1714-GW (PJW)
CV

## INSTRUCTIONS - PLEASE READ CAREFULLY

1.   To use this form, you must be a person who either is currently serving a sentence under a judgment against you in a California state court, or will be serving a sentence in the future under a judgment against you in a California state court. You are asking for relief from the conviction and/or the sentence. This form is your petition for relief.

2.   In this petition, you may challenge the judgment entered by only one California state court. If you want to challenge the judgment entered by a different California state court, you must file a separate petition.

3.   Make sure the form is typed or neatly handwritten. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

4.   Answer all the questions. You do not need to cite case law, but you do need to state the federal legal theory and operative facts in support of each ground. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a legal brief or arguments, you may attach a separate memorandum.

5.   You must include in this petition all the grounds for relief from the conviction and/or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

6.   You must pay a fee of $5.00. If the fee is paid, your petition will be filed. If you cannot afford the fee, you may ask to proceed in forma pauperis (as a poor person). To do that, you must fill out and sign the declaration of the last two pages of the form. Also, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account at the institution. If your prison account exceeds $25.00, you must pay the filing fee.

7.   When you have completed the form, send the original and two copies to the following address:

Clerk of the United States District Court for the Central District of California
United States Courthouse
ATTN: Intake/Docket Section
312 North Spring Street
Los Angeles, California 90012

LODGED
CLERK, U.S. DISTRICT COURT
OCT 15 2014
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

PLEASE COMPLETE THE FOLLOWING: (*Check appropriate number*)

This petition concerns:
1. ☒ a conviction and/or sentence.
2. ☐ prison discipline.
3. ☐ a parole problem.
4. ☐ other.

## PETITION

1. Venue
   a. Place of detention _Ironwood St Prison_
   b. Place of conviction and sentence _Los Angeles County Criminal Courts Bldg_

2. Conviction on which the petition is based (*a separate petition must be filed for each conviction being attacked*).
   a. Nature of offenses involved (*include all counts*): _Murder (187(a) Count 1_
   _and One Count of Conspiracy to Commit the Crime of_
   _Assault – Section 664/245 (a)(1)_
   b. Penal or other code section or sections: _186.22 (b)(4), 1192.7 (c)(28),_
   _186.22 (b)(1)(b)_

   c. Case number: _SA072508 – 04_
   d. Date of conviction: _Sept 1, 2010_
   e. Date of sentence: _October 1, 2010_
   f. Length of sentence on each count: _15 Years to Life_

   g. Plea (*check one*):
      ☒ Not guilty
      ☐ Guilty
      ☐ Nolo contendere
   h. Kind of trial (*check one*):
      ☒ Jury
      ☐ Judge only

3. Did you appeal to the California Court of Appeal from the judgment of conviction?   ☒ Yes  ☐ No
   If so, give the following information for your appeal (*and attach a copy of the Court of Appeal decision if available*):
   a. Case number: _B228221 – B233787_
   b. Grounds raised (*list each*):
      (1) _Insufficiency Of Evidence in Violation of 14th Amend_
      (2) _Due Process_

    (3) _____

    (4) _____

    (5) _____

    (6) _____

  c.  Date of decision: *Oct 25, 2012*

  d.  Result *Affirmed*

4.  If you did appeal, did you also file a Petition for Review with the California Supreme Court of the Court of Appeal decision? ☒ Yes  ☐ No

  If so give the following information *(and attach copies of the Petition for Review and the Supreme Court ruling if available)* :

  a.  Case number: *B228221 – B233787*

  b.  Grounds raised *(list each)*:

    (1) *Insufficiency of EVIDENCE to support Conviction Violating Due PROCESS 14th Amend*

    (2) *petitioner Hurtado joins issues raised*

    (3) *by Co-petitioner Jason Coleman on Direct Appeal.*

    (4) _____

    (5) _____

    (6) _____

  c.  Date of decision: *Feb 13th, 2013*

  d.  Result *Denied*

5.  If you did not appeal:

  a.  State your reasons _____

    _____

    _____

    _____

  b.  Did you seek permission to file a late appeal?  ☐ Yes  ☐ No

6.  Have you previously filed any habeas petitions in any state court with respect to this judgment of conviction?

  ☐ Yes  ☒ No

  If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and the rulings on the petitions if available)*:

  a.  (1) Name of court: *N/A*

    (2) Case number: _____

    (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

    (a) _____

    (b) _____

    (c) _____

    (d) _____

    (e) _____

    (f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?　　☐ Yes　☐ No

b.　(1) Name of court: _____

    (2) Case number: _____

    (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

    (4) Grounds raised *(list each)*:

        (a) _____

        (b) _____

        (c) _____

        (d) _____

        (e) _____

        (f) _____

    (5) Date of decision: _____

    (6) Result _____

_____

    (7) Was an evidentiary hearing held?　　☐ Yes　☐ No

c.　(1) Name of court: _____

    (2) Case number: _____

    (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

    (4) Grounds raised *(list each)*:

        (a) _____

        (b) _____

        (c) _____

        (d) _____

        (e) _____

        (f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?      ☐ Yes ☐ No

7.   Did you file a petition for certiorari in the United States Supreme Court?      ☐ Yes   ☒ No

    If yes, answer the following:

    (1) Docket or case number (if you know): _____

    (2) Result: _____

_____

    (3) Date of result (if you know): _____

    (4) Citation to the case (if you know): _____

8.   For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than five grounds. Summarize briefly the facts supporting each ground. For example, if you are claiming ineffective assistance of counsel, you must state facts specifically setting forth what your attorney did or failed to do.

CAUTION:   *Exhaustion Requirement*:  In order to proceed in federal court, you must ordinarily first exhaust your state court remedies with respect to each ground on which you are requesting relief from the federal court.  This means that, prior to seeking relief from the federal court, you first must present all of your grounds to the California Supreme Court.

    a.   Ground one: Trial Counsel Was Ineffective for failing to raise properly Confrontation Clause Violation and/or Aranda Bruton Error violating 6th Amend right to Counsel

    (1) Supporting FACTS:

See Attached Points and Authorities for info.

    (2) Did you raise this claim on direct appeal to the California Court of Appeal?      ☐ Yes ☒ No

    (3) Did you raise this claim in a Petition for Review to the California Supreme Court?      ☐ Yes ☒ No

    (4) Did you raise this claim in a habeas petition to the California Supreme Court?      ☒ Yes ☐ No

    b.   Ground two: Petitioners Confrontation Clause rights were violated due to untrustworthy Penal Interest Statements, Violating 6th and 14th Amendment Rights

    (1) Supporting FACTS:

See Attached Points and Authorities.

_____

_____

_____

    (2) Did you raise this claim on direct appeal to the California Court of Appeal? ☐ Yes ☒ No

    (3) Did you raise this claim in a Petition for Review to the California Supreme Court? ☐ Yes ☒ No

    (4) Did you raise this claim in a habeas petition to the California Supreme Court? ☒ Yes ☐ No

c.  Ground three: _____

_____

    (1) Supporting FACTS: _____

_____

_____

_____

    (2) Did you raise this claim on direct appeal to the California Court of Appeal? ☐ Yes ☐ No

    (3) Did you raise this claim in a Petition for Review to the California Supreme Court? ☐ Yes ☐ No

    (4) Did you raise this claim in a habeas petition to the California Supreme Court? ☐ Yes ☐ No

d.  Ground four: _____

_____

    (1) Supporting FACTS: _____

_____

_____

_____

    (2) Did you raise this claim on direct appeal to the California Court of Appeal? ☐ Yes ☐ No

    (3) Did you raise this claim in a Petition for Review to the California Supreme Court? ☐ Yes ☐ No

    (4) Did you raise this claim in a habeas petition to the California Supreme Court? ☐ Yes ☐ No

e.  Ground five: _____

_____

    (1) Supporting FACTS: _____

_____

_____

_____

    (2) Did you raise this claim on direct appeal to the California Court of Appeal? ☐ Yes ☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?   ☐Yes   ☐No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?   ☐Yes   ☐No

9.   If any of the grounds listed in paragraph 7 were not previously presented to the California Supreme Court, state

briefly which grounds were not presented, and give your reasons: _____

_____

_____

10.   Have you previously filed any habeas petitions in any federal court with respect to this judgment of conviction?

☐Yes   ☒No

If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and*

*the rulings on the petitions if available)*:

a.   (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?   ☐ Yes ☐ No

b.   (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?     ☐ Yes ☐ No

11. Do you have any petitions now pending (i.e., filed but not yet decided) in any state or federal court with respect to this judgment of conviction?     ☐ Yes ☒ No

If so, give the following information *(and attach a copy of the petition if available)*:

(1) Name of court:     *N/A*

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

12. Are you presently represented by counsel?     ☐ Yes ☒ No

If so, provide name, address and telephone number:     *N/A*

_____

_____

WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding,

_____
*Signature of Attorney (if any)*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on *OCT- 6 -2014*     _____
*Date*                                                    *Signature of Petitioner*

S218641

# IN THE SUPREME COURT OF CALIFORNIA

## En Banc

---

In re JASON ANTHONY HURTADO on Habeas Corpus.

---

The petition for writ of habeas corpus is denied.

Werdegar, J., was absent and did not participate.

SUPREME COURT
FILED

SEP 1 7 2014

Frank A. McGuire Clerk
_____
Deputy

CANTIL-SAKAUYE
_____
*Chief Justice*

PROOF OF SERVICE

Declaration of Service by Mail

I, _Jason Hurtado_, declare that I am over the age of eighteen (18) and that I (am/am not) a party to this action. On _____, _10 - 6 - 2014_, I deposited a copy of the following document(s):

- Habeas Corpus Petition
- Attached Points And Authorities And/or Documents and Exhibits

In a sealed envelope with the postage prepaid into the United States mail outlet via an authorized California Department of Corrections employee at Ironwood State Prison, in Riverside County, Blythe, California, and addressed as follows:

- United States Central District Courthouse
312 North Spring Street
Los Angeles, CA 90012

Office of The Attorney General
300 South Spring Street
Los Angeles, CA 90013

I declare under penalty of perjury by the laws of the State of California that the foregoing is true and correct (pursuant to 28 USCA §1746(2)).

DATE _10 - 6 - 2014_        SIGNATURE _Jason Hurtado_

Table of Authorities and/or Codes

①

People v Aranda (1965) 63 Cal. 2d 518, 47

people v Cervantes 118 Cal. App 4th 162 (2dist (2004)

people v Duarte 24 C 4th 603 (2000)

people v Flores 58 Cal. App. 764 (2dist (1943)

people v Greenberger 68 Cal. Rptr. 2d (2dist (1997)

people v Garcia 168 C.A. 4th 261 (2008)

In re Jones (1996) 13 C. 4th 552, 54

people v Ledesma 43 Cal. 3d 171 (Cal. 1987)

people v Montoya 149 4th 1139 (4dist. (2004)

people v Maury 30 cal 4th 342 (2003)

people v Neely, Cal. App. 4th 787 (2dist (2009)

people v Valencia, Cal. App. 4th 92 (6 Dist. (2006)

people v Zapien, 4 Cal. 4th 929 (Cal. 1993)

Hurd v People, 25 Mich. 405

people v Schmaus, 109 Cal. App. 4th 846 (2 dist (2003)

U.S. v Magana-Olvera, 917 F. 2d 401 (9th Cir. 1990)

U.S. v Oliver, 626 F. 2d 254 (2d Cir. 1980)

U.S. v Hill, 901 F. 2d 880 (10th Cir. 1990)

U.S. v Satterfield   F. 2d 687 (C.A.9 (Or.) 1978)

U.S. v Hoyos   573 F. 2d 1111 (9th Cir. 1978)

U.S. v Detrich, 865 F. 2d 17 (2nd Cir. (1988)

U.S. v Penagos   823 F. 2d 346 (9th Cir. 1989)

U.S. v Lewis 850 F. Supp. 2d 709 (N.D. Ohio 2012)

U.S. v Taylor 328 F. Supp. 2d (N.D Ind) 2004

U.S. v Johnson 904 F. Supp 1303 (M.D Ala) 1995

U.S. v Fernandez 172 F. Supp 2d 1252 (C.D. Cal) 2001

Taylor v Commonwealth, 821 S.W. 2d 72 (ky. 1990)

U.S. v Aguilar (C.A.9 (Cal) 2002) 295 F. 3d 1018

Hash v Johnson, 845 F. Supp. 2d 711 (W.D (Va.) 2012

(2)

Fratta @ Quarterman 536 F.3d 485 (C.A.5 (Tex.) 2008)

U.S. @ Shukri, 207 F.3d 412 (7th Cir. 2000)

2  U.S. @ Boone, 229 F.3d 1231 (9th Cir. 2000)

3  U.S. @ Hughes, 535 F.3d 880 (C.A.8 (S.D.) 2008)

4  U.S. @ McClesky 228 F.3d 640 (C.A.6 (Ohio) 2000)

5  U.S. @ Peterson, 140 F.3d 819 (C.A.9 (Cal) 1998)

6  U.S. @ Gonzales, 121 F.3d 928 (C.A.5 (Tex.) 1997)

7  Baldwin @ Adams F.Supp. 2d 889 (N.D. (Cal) 2012)

8  Moore @ Czerniak, 534 F.3d 1128 (C.A.9 (Or.) 2008)

9  Byrd @ Lewis, 566. F.3d 855  (9th Cir. 2009)

10  Padilla @ Terhune, 309 F.3d 614 (C.A.9 (Cal) 2002)

11  Fulcher @ Motley, 444 F.3d 791 (C.A.6 (Ky.) 2006)

12  Stapleton @ Wolfe, 288 F.3d 863 (6th Cir. 2002)

13  Griffen @ Harrington, WL 5464609 (C.D. (Cal) 2012)

14  U.S. @ Harris 403 U.S. 573 S.Ct 2075 (1971)

15  Bruton @ U.S., 88 S.Ct 1620 (1968)

16  Williamson @ U.S. 512 U.S. 594 (1994)

17  Chapman @ California, 386 U.S. 18,17 (1967)

18  Chambers @ Mississippi, 410 U.S. 284 (Miss. 1973)

19  Barber @ Page, 390 U.S. 719 (1968)

20  Lilly @ Virginia, 527 U.S. 116 (1999)

21  Lee @ Illinois, 476 U.S. 530 S.Ct (1986)

22  Idaho @ Wright, 497 U.S. 805 (1990)

23  HOUSE @ Bell 126 S.Ct 2064 (2006)

24  Strickland @ Washington, 466 U.S. 668 (U.S. Fla. 1984)

25  Brecht @ Abrahamson 507 U.S. 619 (U.S. Wis) 1993)

26  Fry @ Pliler 551. U.S. 112 (2007)

27  Deleware @ Van Arsdall 475 U.S. 673 (1986)

28  Dutton @ Evans, 400 U.S. 74 (1970)

③

California. penal Code West.Anns §245
California Penal Code 686 ③
California Evidence Code 1230
California Evidence Code 352
Federal Rules of Evidence 804 (b)(3)
Federal Rules of Evidence 807
West. Anns, California. Const. Art 1 §15
U.S.C.A. Const. Amendment 6, 14 and 5
28. U.S.C.A. §2254

Ground. I

Trial Counsels failure to raise Aranda-Bruton Error and or Confrontation Clause Violation, due to lack of reliability and untrustworthiness of Codefendants Penal Interest Statements, before trial and during 402 hearings. ▷ Bruton ⓥ United States, 88 S. ct 1620 (1968) ▷ Right of cross examination is included in right of an accused in criminal case to confront witnesses against him. ▷ U.S.C.A. Const. Amend. 6.

▷ . A convicted defendants claim that counsels assistance was so defective as to require reversal of a conviction has two components; First, defendant must show that counsels performance was deficient, requiring showing that counsel made Errors so serious that counsel wasn't functioning as the counsel guaranteed by the 6th Amendment of the United States Constitution and Second, defendant must show that the deficient performance prejudiced the defense by showing that counsels errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable. ▷ Strickland ⓥ Washington, 466. U.S. 668 ▷ U.S.C.A. Const. Amend. 6. ▷ Strickland (U.S. Fla. 1984)

▷ Counsel provided Ineffective Assistance in failing to conduct factual investigation and legal research into the Trustworthiness Standard of Penal Interest Statements, where evidence was available to counsel which supported such defense, and Trustworthiness Standard would be proper to litigate. ▷ West's Ann. Cal. Const. Art. 1 § 15; U.S.C.A. Const. Amend. 6. ▷ People ⓥ Ledesma, 43 Cal. 3d 171 (Cal. 1987), also 845 F. Supp. 2d 711, Hash ⓥ Johnson (W.D. Va 2012)

(1)

In petitioners case herein, multiple errors occured from trial counsels inadequacy to challenge the Trustworthiness and prejudicial effect of the admission of codefendants unreliable hearsay statements. Thus denying petitioner of a fair trial. ▷U.S.C.A. Const. Amend. 6 #5, also ▷ Stapleton ⊙Wolfe, 288 F.3d 863 (6th. Cir. 2002).

▷Prior to trial, defense counsel even knowing he could be denied raising any Bruton Error and or Confrontation Clause violation, should have done so anyway to preserve the record for Sixth Amendment Constitutional purposes and 14th Amendment Due Process rights of the United States Constitution.

▷Petitioners trial Counsel failed to respond to prosecutors offer of proof for Penal Interest Statements from a motion prosecutor filed July 19th of 2010, which was pre-trial. ▷Refer to (RT Volume 5) → page 490 and 520 of (Volume 5, RT)

▷Although the Defense filed a motion concerning Greenberger - Cervantes ▷(RT-5 page 471), the petitioner doesn't have any physical possession of this motion, nor does petitioner have any knowledge about what this specific motion argues. This still leaves petitioner with doubt about whether Mr. Creary made any specific objections on behalf of petitioner towards the erroneous admission of these non-testifying codefendants out-of-court statements.

▷The record shows that codefendant Jason Colemans penal Interest statement was open for litigation, prior to

1  the witness (Stephen Simpson) testifying to the statement in

2  front of the jury. ▷ Refer to (RT 5 pages 533-534).

3        ▷ Citing; In re Jones (1996) 13 C.4th 552, 54 C.R.2d

4  ▷ Stresses the importance of pre-trial investigation

5  as a basis for making an informed decision

6  regarding evidence, An important part of a defense

7  Attorneys task is to seek exclusion of evidence that

8  is critical to the prosecutions case or that is highly

9  prejudicial. ▷ In re Jones, id,     ▷ Cal. Evid. Code 352

10  regarding exclusion of evidence to prevent-undue prejudice

11  and of misleading the jury. ▷ See also Ground 3 on how

12  statements misled the jury.

13        ▷ According to Greenberger 68 Cal. Rptr. 2d (2.dist. 1997)

14  ▷ Any such statement must satisfy the statutory definition

15  of a declaration against Interest and likewise satisfy

16  the Constitutional requirement of Trustworthiness. This necessarily

17  requires a fact-intensive inquiry, which would require

18  careful examination of all the circumstances surrounding

19  the criminal activity involved; ▷ Williamson (v) U.S. 512 U.S. 594 (1994).

20        ▷ Petitioners trial counsel had equal opportunity

21  to challenge the inconsistencies in relation to codefendant

22  Jason Colemans penal interest statement.

23  ▷ Referring to (RT Volume 5, page 526 - Lines 5-9, petitioners

24  trial counsel makes an unintelligible objection, which was vague

25  and also harmful towards petitioners trial. ▷ See (Exhibit A) herein

26  See also Ground 3.

27        ▷ Petitioners trial counsel failed to file a response

28  to prosecutors offer of proof on the Penal Interest Statements

               Refer to (RT 5 page 490)

To determine prejudice from Ineffective Assistance of
Counsel, as would support grant of Federal Habeas
relief, appropriate question is whether there is a
reasonable probability that absent counsels errors, fact
finder would have had reasonable doubt respecting guilt,
if states case is weak, there is greater likelihood
that result of trial would have been different, and
vice versa, U.S.C.A. Consl. Amend. 6 & 28 U.S.C.A § 2254 (d)
Quoting Baldwin v Adams, F.Supp. 2d 889 (N.D. (Cal) 2012).

Defense counsel has a duty to bring to
bear such skill and knowledge as will render the trial
a reliable adversarial testing process; Strickland v Washington;
U.S.C.A. Consl Amend. 6.

In People v Neely, Cal. App. 4th 787 (2 dist. (2009)
Defendant failed to show that defense counsel was
deficient in failing to object to hearsay evidence that
defendant's CoConspirator had confessed to participating
in the crime, and thus defendant failed to show ineffective
assistance of counsel, where the evidence against defendant
was overwhelming and defendant had also confessed; counsel
could conclude that evidence of coconspirator confession
might have been benificial to the defense because it
identified another person who could be blamed for the
actual shooting of murder victim.

In petitioners case herein there wasn't any
overwhelming evidence against petitioner to prove assault
or Murder.

Defense counsels failure to object to hearsay

to his sworn testimony, wasn't reasonable whatever counsels' thinking may have been at the time. Citing → Griffen v Harrington, WL 5464609 (C.D. Cal) 2012)

→ West Anns Cal. Const. Article 1 §15, U.S.C.A. Const. Amend. 6.
→ Petitioners trial counsel's first duty is to investigate facts of clients case and to research law applicable to those facts. → People v Ledesma 43 Cal. 3d 171 (Cal. 1987).

→ A trial lawyer shall do everything in his or her power to state for the record, prejudice to the court. It's the judges discretion to exclude such evidence; Calif. Evid. Code. 352.

→ It was up to petitioners trial Counsel to investigate Greenberger-Cervantes, which case laws the prosecutor submitted to support her motion concerning Penal Interest Statements of codefendants. As i've read in Greenberger, 58 Cal. App. 4th 298, it states that "this is not to say that all statements which incriminate the declarant and implicate the codefendant are admissible." Any such statement must satisfy the statutory definition of a declaration against penal Interest and likewise satisfy the Constitutional requirement of Trustworthiness. Greenberger states; The Court says clearly the last reliable Circumstance is one in which the declarant has been arrested and attempts to improve his situation with authorities. → See - Lilly v Virginia 527 U.S. 116 (1999), People v Schmaus, 109 Cal. App. 4th 846 (2 dist (2003); See also Ground 2.

⑥

was prejudicial; other evidence from which jury could
have inferred that "petitioner was at the liquor store
prior to the assault on victim, and petitioner admitting
to burning the alleged victims wallet was far less compelling
than codefendants untrustworthy penal Interest statement,
thereby undermining confidence in the verdict ▷ People ⊙
Valencia. Cal. App. 4th. 92 (6 Dist (2006) ▷ U.S.C.A. Const. Amend. 6, West. Ans
Cal. Penal. Code § 245.

▷ The record must demonstrate a reasonable
probability that, but for counsels unprofessional Errors,
the result of the proceeding would have been different.
A reasonable probability is a probability sufficient to
undermine confidence in the outcome ▷ People ⊙ Maury, 30 Cal.
4th. 342 (2003).

▷ Under "Strickland" it calls for an inquiry
into the objective reasonableness of counsels
performance, not counsels subjective state of mind.

▷ Defendants trial counsel's failure to object to the
prosecutor eliciting unsworn testimony from a witness
in a murder trial was not reasonable, supporting defendants
Ineffective Assistance of Counsel Claim; the unsworn witness
was the only witness whoever stated he saw
defendant shoot the victim, and the unsworn
witnesses testimony was therefore the most incriminating
testimony, and the most critical to exclude, and when
the witness unexpectedly refused to take oath, defense
counsel was given his chance, but the course counsel
took, cross-examining the witness rather than objecting

Trial Counsel must work to the apex of his or her ability to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. ▷U.S.C.A. Const. Amend. 6., ▷ Strickland, id.   ▷ It was my trial Counsels duty to challenge the validity and Trustworthiness of such penal Interest statements. It is also the judges discretion to allow such statements into evidence.

▷Greenberger states; the decision whether trustworthiness is present requires the court to apply to the peculiar Facts of the individual case a broad and deep acquaintance with the way human beings actually conduct themselves in the circumstances material under the exception. Such an endeavor allows, in fact demands, the exercise of discretion.

▷The decision to determine whether trustworthiness was present to allow Jason Colemans Penal Interest Statement, in petitioners case was never litigated on transcript. During the course of trial codefendant Sammy Murphy's attorney objected to codefendant Gwindon Murphys penal Interest Statement ▷Refer to (RT 5 page 488), which then a hearing was conducted to determine the statements admissibility and prejudicial effect. No such hearing or objection occured before Stephon Simpson took the stand, in which he testified to what Petitioners codefendant Jason Coleman allegedly told him. It was ineffective assistance of trial counsel not to investigate Greenberger-Cervantes, to show for the record that Cal. Evid. Code, 1230, and GreeNberger-Cervantes doesn't apply and should be inadmissible because of the trustworthy standard, and allowing in such

(7)

Prejudicial evidence would violate Mr Hurtados Sixth Amendment Confrontation Clause right. ▷ SEE (Ground 2)

▷ Trial counsel should have had the knowledge to counter attack the reliability Test and trustworthiness of the surrounding circumstances to admit codefendants out-of-court statements. ▷ SEE   Stapleton v Wolfe, 288 F.3d 863 (6th.Cir. 2002), stapletons counsel objected, arguing that he had been given no opportunity to cross-examine studer and that no corroborating circumstances existed to establish the trustworthiness of studers taped statements. The trial court determined that studer was an unavailable witness and that his taped statements were against his interest, but delayed ruling on the admissibility of those statements until Foreman testified.

▷ As said before in this argument, petitioners trial counsel had equal opportunity to discuss and litigate on record whether or not Jason Colemans Penal Interest statement had sufficient particularized guarantees of trustworthiness in order to satisfy petitioners constitutional right of Confrontation under the Sixth Amendment.

▷ From the facts in petitioners case, the petitioner here is left with unarguable evidence of trial counsels incompetence, which eventually led to petitioners conviction. Prosecutions case against petitioner was a far cry from overwhelming.   ▷ Quoting ▷ People v Duarte 24. C.4th 603 (2000). ▷ In light of the absence of any eyewitnesses, the lack of physical evidence linking defendant to the crime, and the serious impeachment of the one witness the prosecution

(8)

relied on most heavily, it seems likely the jury would have reached result more favorable to defendant had the sargeants testimony been excluded. ▷ See also Moore ⊘ Czerniak 534 F.3d 1128 (C.A.9(Or.) 2008) → Defense Attorneys failure to seek suppression of taped confession was prejudicial, given weakness of states case without it. Moreover in light of the Supreme Courts recognition of the inherent unreliability of a Codefendants testimony, the state would certainly not have believed that, without Moores taped confession, Saylers testimony could have given it the same chance of obtaining a conviction.

▷ Had petitioners codefendant Jason Coleman's untrustworthy penal Interest Statement been excluded, a result more favorable to petitioners innocence would result.

▷ In Conclusion petitioner argues that Mr. Creary was inefficient during very important pre and in trial proceedings. Which all had to do with the erroneous admissions of codefendants Penal Interest Statements. By experience of being a lawyer, Mr Creary should have known that without the erroneous admissions, the prosecutions case against petitioner was weak.

▷ In the context of establishing prejudice for a claim of Ineffective Assistance, reasonable probability of prejudice is a probability sufficient to undermine confidence in the outcome of the case; People ⊘ Montoya (4 dist. 2007) 149 4th 1139

▷ U.S.C.A. Const. Amend. 6.

for the foregoing reasons, petitioner feels that he has shown a reasonable probability of prejudice. Due to this, petitioners Sixth Amendment right to adequate representation of counsel has failed for the reasons mentioned herein, and therefore requires reversal.

Ground. 2

1    ▷ Erroneous Admission of codefendants statements
2    was a violation of Federal Rules of Evidence 804(b)(3)
3    which therefore was a deprivation of Cross-Examination
4    violating Petitioners Constitutional rights under the 6th
5    and 14th Amendment. ▷ Bruton ⊙ United States, 88 S. Ct. 1620 (1968)
6    U.S.C.A. Const. Amend. 6 and 14 ; ▷ U.S. ⊙ McClesky 228 F. 3d
     640 (C.A. 6 (Ohio) 2000)
7        ▷ In all criminal prosecutions, the accused shall
8    enjoy the right to a speedy and public trial by an
9    impartial jury of the state and district wherein the
10   crime shall have been commited, which district shall
11   have been previously ascertained by law, and to be
12   informed of the nature and cause of the accusation;
13   to be confronted with the witnesses against him; to
14   have compulsory process for obtaining witnesses in his
15   favor, and to have the assistance of counsel for his defense,
16   ▷ U.S.C.A. United States Constitution. Amend. 6.
17   ▷ Right of cross-examination is included in right of an
18   accused in criminal case to confront witnesses against him
19   ▷ U.S.C.A. Const. Amend. 6, ▷ Bruton ⊙ U.S., supra ; Calif. pen. Code
20   686 (3), Barber ⊙ Page 390 U.S. 719 (1968).
21       ▷ Aranda - Bruton ERROR is reviewed under
22   Chapman Standard [Chapman ⊙ Calif, 386 U.S. 18, 17 (1967)], error
23   that denies defendant a right guaranteed by Federal
24   Constitution requires reversal unless prosecution can show
25   it was harmless beyond a reasonable doubt; People ⊙ Garcia
26   168 C.A. 4th 261, 281 (2008).
27       ▷ In determining whether habeas relief must be
28   granted for Erroneous Admission of hearsay and Confrontation

①

1 Clause violation, standard is whether error had
2 substantial and injurious effect or influence in determining
3 jurys verdict, rather than whether error was harmless
4 beyond a reasonable doubt; U.S.C.A. Const. Amend. 14, 28 U.S.C.A.
5 § 2111, 2254 ▷ Brecht ⊙ Abrahamson, 507 U.S. 619 (U.S. (Wis) 1993)
6 Even where constitutional error is found, in Federal Habeas
7 proceeding the court must also assess the prejudicial
8 impact of the Constitutional Error under the Brecht
9 standard ▷ 28 U.S.C.A. § 2254. Federal Habeas relief is
10 warranted only if the constitutional error had a substantial
11 and injurious effect or influence in determining jurys
12 verdict; U.S.C.A. § 2254. ▷ Burden remains on the state
13 to show the error was harmless, they only need to show
14 that the error didn't have a substantial and injurious
15 effect on the jurys decision; SEE ▷ Fry ⊙ Pliler (2007) 551. U.S. 112;
16 Byrd ⊙ Lewis 566 F.3d 855 (9th. Cir. 2009).
17 ▷ Whether an error is harmless depends on a variety
18 of factors, including whether the testimony was cumulative,
19 the presence or absence of evidence corroborating or contradicting
20 the testimony of the witness of material points, the extent
21 of cross-examination, and, of course, the overall strength of the
22 prosecutions case. ▷ Deleware ⊙ Van Arsdall, 475 U.S. 673, 684 (1986), U.S.C.A.
23 Const. Amend. 6.
24     ▷ Federal Rules of Evidence  804 (b)(3)
25 ▷ Rule 804 → Exceptions to the Rule against Hearsay — —
26 when the declarant is unavailable as a witness.
27 ▷ (B) The declarants attendance or testimony, in the case of a
28 hearsay exception under Rule 804 (b)(2), (3) or 4
   ▷ (3) A statement against Interest

▷ (A)→ Statement that a reasonable person in the declarants shoes/position would have made only if the person believed it to be true because, when made, it was so contrary to the declarants proprietary or pecuniary interest or had so great a tendency to invalidate the declarants claim against someone else or to expose the declarant to civil or criminal liability; and is supported by corroborating circumstances that clearly indicate its trustworthiness, if it offered in a criminal case as one that tends to expose the declarant to criminal liability.

▷ To be admitted under the residual hearsay exception, the statement must have circumstantial guarantees of trustworthiness, and the court examines the reliability of the necessity for the statement. ▷ Fed. Rules. Evid. Rule 807; 28 U.S.C.A, ▷ U.S. ⓥ Hughes 535 F. 3d 880 (C.A.8 (S.D.) 2008)

▷ In determining if statement by out-of-court declarant is admissible under hearsay exception for trustworthy statements against penal interest, trustworthiness is evaluated by considering probable veracity of in-court-witness and reliability of out-of-court declarant, and consideration may include whether there are circumstances corroborating the statement. ▷ Fed. Rule. Evid. Rule·804(b)(3), 28 U.S.C.A, ▷ U.S. ⓥ Johnson 904 F. Supp, 1303 (M.D. (Ala) 1995)

③

The Unreliability and Untrustworthiness of the Penal Interest Statement in General.

▷ Codefendant "Jason Colemans" Penal Interest Statement as Related by Stephon Simpson. ▷ Peoples Exhibit 36

▷ Approximately Six months after Preston Brumfield died Stephon Simpson was standing in front of 1925 20th Street, Santa Monica, with Jason Coleman, also known as Lucky or Luck, and then were talking about Brumfields death. Coleman said he and C-Walk, referring to Jason Hurtado, were only supposed to beat up Brumfield. Coleman said that he and C-Walk, Jason Hurtado, had been hiding in the cut above area Just south of the front steps of 1948 20th Street when Brumfield walked passed. They Coleman and Hurtado jumped Brumfield from behind and started beating him. They beat him with their fist and kicked him with their feet. Then C-Walk, Jason Hurtado, hit Brumfield in the head with a stick or a pipe. Brumfield tried to defend himself to no avail. Coleman said they left Brumfield lying on the ground bleeding as they ran away. Simpson said Coleman told him the story because Coleman felt bad about Brumfields death. Coleman said he and Hurtado were paid in dope and cash to beat up Brumfield.

▷ To overcome the presumption of unreliability attached to non-testifying accomplice confessions, as would allow admission of confession under the Confrontation Clause, the prosecution must show that the proffered statements bear adequate Indicia of Reliability. → U.S.C.A.Const.Amend.6; Stapleton ⓥ Wolfe 288 F.3d 863 (C.A.6 (Ohio) 2002)

Ⓐ

▷Hearsay Rule is grounded in the notion that untrustworthy evidence shouldn't be presented to the fact-finders, also in the exercise of his right to present witnesses in his own defense, the accused, like the state, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt or innocence. ▷Chambers ♥ Mississippi 410 U.S. 284 (Miss. 1973)

▷ The Circumstances under which this statement allegedly occured.

▷ Stephon Simpson testifys under oath that from July 4th 2008. to January 7th 2009 to be exact, he was in a lockdown Rehabilitation Center in San Fernando Valley, city of Canoga Park. ▷Refer to (RT Volume 6 page 770). At the beginning of the alleged statement that Stephon Simpson signed, it starts off ; Approximately 6 months after Preston Brumfield died, he, Stephon Simpson was standing in front of 1925 20th Street, Santa Monica, with Jason Coleman also known as Lucky. That would be around NOVEMBER of 2008 because Preston Brumfield got assaulted May 11th 2008 and passed away the same week. It would be physically Impossible to have heard codefendant Jason Coleman say anything, because in NOVEMBER of 2008, Stephon Simpson was in Canoga Park at a Rehab Center. In petitioners appeal from the Second Appellate District Division Two, they confirm the same Penal Interest Statement which is peoples Exhibit 36. ▷ See page 7 and 17 of the Direct Appeal (Responding Brief) filed October 25, 2012.

(B)

▷The Contents in which this statement Contains,
   ▷Every detail that inculpated petitioner
were rumors that Detective Henry had knowledge of
a Year and 3 months prior to the Stephen Simpson interview,
which took place on October 1, 2009 at the Santa Monica
Police Dept.        ▷Refer to (RT 5 page 485)▷Virjine
Murphy testifys to Gwindon Murphy hearsay in which
Gwindon Murphy allegedly says "then beat him with
a stick or something. That's what they do, beat him with
an object. It would have been a bat (most likely a bat) (Page 486)
▷Refer To (CT Volume 1 page 82) ▷ Margarita Jones tells
Detective Henry "Gwindon Murphy said" Well, they were
hiding behind those bushes."
      ▷Refer to (CT Volume 1 - Margarita Jones' Interview and
Virjine Murphy Interview) ▷ These interviews took place
in 2008, by Detective John Henry, in the month of August 8, 2008.
      ▷ The details about 3 guys with bats hiding
in bushes, being payed dope and money, was all from
hearsay from Gwindon Murphy, a NON-TESTifying
Codefendant. ▷ Refer to (RT5 Page 664)▷ Margarita Jones
states that Stephon Simpson was one of the 6 or 7 people
to tell her about 3 guys beat Brumfield with a bat.


      ▷Next we deal with the Incredible Inconsistentcies
   of Stephon Simpson, which in turn diminished the
reliability and Trustworthiness of Jason Colemans Penal Interest Statement.


      ▷① Stephon Simpson says it took him 10 to 15 maybe 30 seconds
to walk by Jason Coleman. (RT 6, page 798)

Ⓒ

▷ ② Stephon Simpson admits that Jason Colemans conversation lasted as long as it took him "Stephon Simpson" to walk seven feet. Which would be 10 to 15 maybe 30 seconds, according to Simpsons testimony. (RT 6 Page 798) and (RT 6 page 812).

▷ ③ Mr Simpson says he was talking to someone else that was there and Simpson overheard Jason Coleman talking to someone. (RT 6, page 793)

▷ ④ Stephon Simpson testifys that the first time he ever told anyone about the alleged conversation with Coleman was August of 2008 to Detective Henry while in Canoga Park. at Rehab. ▷ (RT 6 page 802)

▷ ⑤ Simpson testifys that he "Stephon Simpson" didn't directly have a conversation with Jason Coleman. He says Detective Henry wrote it down wrong. ▷ (RT 5 page 710).

▷ ⑥ Simpson testifys that everything he told Det. Henry was hearsay by other people talking. (RT 5 page 714-715)

▷   ⑦   Simpson agrees with Counsel that the conversation he overheard with Coleman occured prior to July 4 of 2008, before Mr Simpson went into rehab. (RT 6 page 810).

▷ ⑧ Stephon Simpson denies hearing Coleman say anything about "he" meaning Coleman and Hurtado were pilot in Dope and Cash to beat up Preston Brumfield. ▷ (RT 5 page 719) also (RT 6 page 837).

▷ The Surrounding Circumstances of the Production of Jason Colemans Penal Interest Statement, As declared by Government witness Stephon Simpson.
▷ On July 22, 23 and 24 of 2009, Prosecution

Ⓓ

1  witness Stephon Simpson made narcotic sales to an
2  undercover agent in the city of Santa Monica.
3  ▷ Refer to (RT 7 page 777, 785-786).
4  On October 1, 2009 the Santa Monica Police Department
5  arrested Stephon Simpson for those 3 sales charges.
6  Mr Simpson was then interviewed by Narcotics Detectives
7  who spent 20 to 30 minutes telling Mr. Simpson what
8  he was facing. (7RT. 905-906). Simpson knowing he
9  was on probation at the time for assault, knew he
10 was facing 15 to 18 years on top of the 2007 offense.
11 ▷ (RT 7 pg 892, 898-899). Mr Simpson felt pressure before
12 speaking to Detective Henry, ▷ (RT 6 page 839). ▷ Narcotics
13 Detectives told Mr Simpson "Cooperate and this might work itself out.
14 ▷ See (RT 6 page 839).
15 ▷ The Prosecutor states for the record that Detective Henry
16 did in fact tell her that he Detective Henry informed
17 Stephon Simpson prior to getting his statement, if he
18 Stephon Simpson were to provide information regarding the
19 Brumfield Case, Detective Henry would go to the District
20 Attorneys office and ask them to consider giving
21 consideration for his testimony. Mr Simpson then agreed. (6RT. 844 pg)
22 ▷ On Oct 1, 2009, after the Santa Monica Police
23 detectives interviewed Mr Simpson, he walked home from the
24 police station. (RT 6, page 819).
25 ▷ The Evidence is obviously on its face in proving
26 that Government witness Stephon Simpson was leveraged
27 into the Santa Monica Police Department with dead bang
28 narcotics sales cases. to an undercover agent by the name
   of Lisa. ▷ (RT 7 page 777) also (785-786).

(E)

1  In a 9th Circuit case: U.S. v. Magana-Olvera, 917 F.2d 401 (9th. Cir. 1990)
2  the circumstances and language are identical to petitioners
3  argument herein. In Magana-Olvera the court says, "looking at
4  the circumstances in this case, we conclude that a reasonable
5  person in _ _ _ _ _ ? shoes may well have made the statements
6  even if they were not true. A drug dealer who discovers in
7  jail that one of his customers was an undercover agent
8  has a powerful incentive to minimize the damage of an almost
9  certain criminal conviction. That incentive becomes nearly
10  irresistible when the agent uses a Federal Indictment as a
11  stick, and a promise of leniency as a carrot. See also, U.S. v.
12  Oliver 626 F.2d 254 (2d Cir. 1980) hearsay inadmissible because
13  declarant was in custody and told by FBI agents that his
14  cooperation "would be made known to the U.S. Attorney
15  with an eye towards leniency.   Refer to (RT6 page 844) to compare.
16      By Detective John Henry requesting for
17  Santa Monica Narcotics Detectives to arrest Stephon Simpson
18  for 3 narcotics sales to an undercover agent by way of
19  leverage, so that Detective Henry would exploit Stephon Simpson
20  by utilizing the narcotics sales as a stick and a promise
21  of leniency as a carrot, raises the presumption of unreliability
22  that's already attached to non-testifying codefendants confessions
23  to a higher degree of unreliability.
24      In, U.S. v. Harris 403 U.S. 573, 583 S.Ct. 2075 (1971)
25  Admissions of crime, like admissions against proprietary interests,
26  carry their own Indicia of Credibility -- sufficient at least to
27  support a finding of probable cause to search." While this
28  proposition has some logical appeal, it cannot be applied mechanically
   "without consideration of the setting in which the admission appears.

(F)

There is a vast difference between an informant who comes in off the street to confess complicity in a crime and identify his confederate, and one who, caught with inculpatory evidence, identifies someone else as the principal culprit. ▷Information received from sources who are themselves the focus of pending criminal charges or investigations is inherently suspect. All familiar with law enforcement know that the tips they provide may reflect their vulnerability to police pressure or may involve revenge, braggadocio, self exculpation, or the hope of compensation. ▷Harris (1971) 403 U.S.

▷In petitioners case, none of Stephon Simpsons custodial Interrogations or interviews that took place on Oct 1, 2009 at the Santa Monica Police Department were Tape or Audio Recorded. (RT 9 pages 1387-1391). ▷In Padilla @Terhune 309 F.3d 614 (C.A.9 (Cal) 2002), it says "Unlike the williams statement in Boone, the collins/somerville statement wasn't tape recorded. The fact of recording, however, is relevant only to the reliability of the relator, Munoz, (i.e., did he hear what he said he heard), not to the trustworthiness of the declarant, collins or Somerville. ▷Quoting - U.S.@Fernandez, 172 F.Supp.2d 1252 (C.D.(Cal)2001) → As further indicators of reliability, the Boone court (U.S.@Boone 229 F.3d 1231 (9th Cir. 2000) also considered whether the declarants statement itself was reliable. That is, there is the question of the reliability of the relator, this issue wasn't addressed in Boone. In the Fernandez case, there is     the additional issue of whether the statements were ever made in the first place.

G

1  Petitioner raises the same    issue appropriate to this
2  argument. The issue didn't need to be addressed in
3  Boone because the statements had been taped recorded.

4
5      ▷There seems to be confusing and conflicting
6  issues between courts in certain precedent case laws.
7  in relation to Penal Interest Statements. State Code
8  is contradicting what Federal Code is saying and Vice-Versa.
9  The language is quite misconstrued. Corroborating
10 evidence and Corroborating circumstances are
   irrelevant in State law and relevant in Federal law.
11     ▷For Example: In People @ Greenberger, Cal.Rptr. 2d 61 (2dist. 1999)
12 says, "In determining the particularized guarantees of
13 Trustworthiness, consideration of corroborating evidence
14 is inappropriate since that would constitute "bootstrapping
15 on the trustworthiness of other evidence at trial."⌐
16 ▷Idaho @ Wright, 497 U.S. 805 (1990). also ▷ Fratta @ Quarterman
17 536 F. 3d 485 (C.A.5 (Tex) 2008) ▷(First, the CCA's use of
18 Corroborating evidence such as phone records and physical
19 evidence -- to support the confessions trustworthiness was
20 contrary to clearly established Federal law.)
21 ▷Taylor @ Commonwealth, 821 S.W. 2d 72 (ky. 1990)▷ Taylor requires
22 courts considering the admissibility of hearsay statements
23 against penal Interest to examine; ① The time of the declaration
24 and the party to whom made; ② The existence of
25 Corroborating evidence in the case; ③ the extent to which
26 the declaration is against the declarants penal Interest; ④ The
27 availability of a declarant as a witness. ▷ Cited from ⌐
28 Fulcher @ Motley, 444 F. 3d 791 (C.A.6 (ky) 2006)

(H)

In U.S. © Hoyos, 573 F.2d 1111 (9th Cir. 1978)
One of the factors relevant to trustworthiness is
listed as (b) - The existence of corroborating evidence;
see also Stapleton © Wolfe, 288 F.3d 863 (6th Cir. 2002)
Stapletons counsel objected, arguing that he had
been given no opportunity to cross-examine studer
and that no corroborating circumstances existed to establish
the trustworthiness of Studers taped statements. Fed Rules, Evid
804 (b)(3) section (B) - and is supported by corroborating
circumstances that clearly indicate it's trustworthiness, if it is
offered in a criminal case as one that tends to expose the declarant
to criminal liability.

The same issues occur within the ninth Circuit when
determining the relevance and admissibility to the reliability of the
hearsay relator, to show Indicia of Reliability, and Guarantees
of Trustworthiness to satisfy defendants Sixth Amendment
right of Confrontation of the United States Constitution.
In Padilla © Terhune, 309 F.3d 614 (C.A.9 (Cal) 2002)
A strong argument can be made that the credibility of
the witness is irrelevant to admissibility under 804 (b)(3),
which is basically a hearsay rule. A Test for admissibility of
hearsay statements based on the credibility on the witness who
testifies about a statement is unrelated to the purpose of the
general rule against hearsay.
In the precedent case for the Ninth Circuit,
In U.S. © Satterfield, F.2d 687 (C.A.9 (Or.) 1978), some factors
indicate that rule 804 (b)(3) was intended to give
judges at least limited

Ⓘ

power to exclude an exculpatory statement of alleged accomplices because corroborating circumstances do not clearly indicate the trustworthiness of the witness. First, the rule refers to the trustworthiness of the statement, not the declarant, and that formulation may be broad enough to put the trustworthiness of the witness as well as the declarant at issue.

U.S. v. Shukri, 207 F.3d 412 (7th Cir. 2000), says the key for Rule 804(b)(3), and indeed any hearsay exception, is the reliability of the declarants original statement, not the reliability of the hearsay witness. However, Justice Stewarts plurality opinion in "Dutton" holds that the credibility and Reliability of the relator isn't relevant to a Confrontation Clause analysis. see; Dutton v. Evans, 400 U.S. 74, 88-89 (1970). However, this opinion was joined by only three other justices and this doesn't represent the holding of a majority of the Supreme Court. Quoted from; U.S. v. Aguilar (C.A. 9 (Cal) 2002) 295 F.3d 1018.

Petitioner ask the courts to consider and acknowledge these grounds because they are supported by the record. It appears that depending on the circumstances of each and every case, the courts decide whether to utilize and broaden Federal Law. If the facts are supported by the record, and prejudice is on it's face, it would be unconstitutional to ignore Due Process. U.S.C.A. Const. Amend. 14

(J)

1   ▷   How Corroborating Circumstances are Relevant
2         to Petitioners case. ⹀

3   ▷ The only way to get to the core of the issue, is to
4   broaden the relevant circumstances surrounding the
5   production of Jason Colemans penal Interest statement.
6   It would be unjust and prejudicial to say 'just
7   because the statement is self-inculpatory, the statement
8   itself and everything it contains is admissible and
9   reliable, and ignoring the presumption of unreliability that's
10  already attached to non-testifying codefendants penal
11  interest statements. In petitioners case herein there
12  are a unique version of events that took place, which
13  would raise a reasonable suspicion as to the Indicia of
14  Reliability relevant to Jason Colemans penal Interest Statement.
15  ▷ The only way to consider the truth in Jason Colemans
16  statement is to scrutinize the relator, Stephon Simpson,
17  whom the statement was funneled through. Without Mr Simpson
18  the most incriminating evidence against petitioner
19  would not exist.
20     ▷ Although Stephon Simpson is not a codefendant,
21  the fact of the matter is the circumstances in
22  Magana-olvera (9th Cir. 1990), Lee @ Illinois (1986) 476 U.S. 530 S. Ct, Lilly @ Virginia
23  527 U.S. 116 (1999), and Williamson @ U.S. 512 U.S. (1994), are
24  identical and should apply.
25     ▷ On October 1, 2009 Stephon Simpson was leveraged into
26  the Santa Monica Police Department at the request of Detective
27  John Henry. Stephon Simpson is a person who was arrested
28  in incriminating circumstances. The detectives told Mr. Simpson

Ⓚ

"Cooperate and this might work itself out." Simpson is
a declarant because he then gave a statement with the
incentive that "Hey if i cooperate i wont go to jail."
Refer to (RT 6 page 817) ▷ Mr Simpson walks home from the
Santa Monica Police Department after his interview/interrogation
on October 1, 2009.

▷ There's no way the government could say otherwise
because the custodial interrogation on October 1, 2009
wasn't tape or audio-visual recorded. So petitioners
lawyer had no other obligation but to cross-examine
speculation as to what possibly occured at the Santa Monica
Police Department on October 1, 2009. ▷ Refer to pages B-E
of this ground.

▷ The Question is would a reasonable person
have cooperated with Detective Henry, being under
arrest for 3 narcotics sales to an undercover agent,
all while on probation with the possibility of going to
prison for 15 to 18 years (RT 7 pages 892, 898-899),
the answer would have to be yes.

▷ How the Trustworthiness of the Relator is Relevant
     to Petitioners case. ═

▷ To be admitted under the residual hearsay exception,
the statement must have circumstantial guarantees of
trustworthiness, and the court examines the reliability of and necessity
for the statement. ▷ Fed. Rules. Evid. Rule 807, 28 U.S.C.A, ▷ U.S. @ Hughes,
535 F. 3d 880 (C.A. 8 (S.D.) 2008)

Ⓛ

1  In Padilla v Terhune (9th Cir. 2002), supra

2  Says; unlike williams statement in Boone, the collins/somerville

3  statement wasn't tape recorded. The fact of recording,

4  however, is relevant only to the reliability of the relator,

5  munoz, (i.e., did he hear what he said he heard), not to the

6  trustworthiness of the declarant, collins or somerville.

7  ————————— U.S. v Fernandez, 172 F.Supp. 2d 1252 (C.D. Cal. 2001)

8  As further indicators of reliability, the Boone court also

9  considered whether the declarants statement itself was

10  reliable. That is, there is the question of the reliability

11  of the relator. This issue wasn't addressed in Boone, 229

12  F.3d (9th Cir. 2000). The issue didn't need to be addressed in

13  Boone because the statements had been tape recorded.

14  As previously discussed in this argument,

15  Petitioner urges the courts to conduct a fact intensive

16  inquiry as to the Indicia of Reliability and Guarantee

17  of Trustworthiness of the production of the most critical

18  Evidence the government utilized against petitioner.

19  In Padilla v Terhune, the court says "Hearsay

20  statements are usually excluded because the declarants

21  unsworn, and unavailable for cross-examination and

22  because the jury cannot evaluate his demeanor... The jury

23  can evaluate the perception, memory, narration, and

24  sincerity of the who testifies about the hearsay declaration,

25  and that witness testifies under oath and subject to

26  cross-examination.

27  Refer to pages B-E in this ground. As previously

28  discussed in this argument, pages B-E points to the physically impossible



and inherently improbable testimony of Stephon Simpson
relating to petitioners guilt.

▷ A key factor that helped undermine the confidence in the
jurys determination was Stephon Simpsons alleged fear of
petitioner, which in turn created partiality in the minds of
the jurors. ▷ During the course of trial Mr Simpson was
untruthful about the 3 narcotics sales and pretty much
his whole testimony.   Refer to (RT 6 page 883 —→ during
counsels cross-examination, Counsel ask simpson "When i advised
you about the narcotics sales your first instinct was to lie, Right;
True or False? —→ Mr Simpson said "True."

    ▷ The prosecutor blindsided the defense in order to
bolster Mr. Simpsons credibility, by questioning Simpson about
his new found fear of petitioner and Co defendant Jason Coleman
(Refer to ▷ RT 6 page 895-876).


▷ According to Simpsons testimony he's had this alleged fear
of Jason Coleman and Petitioner since 2007. Mr Simpson testified
that he was confronted by Jason Coleman about being a snitch, and
that was the reason he supposedly got beat up. The coincidence
was that it was the same two people that are on trial for
the assault on Preston Brumfield.
    ▷ Petitioner here argues that the admission of the
"new found fear evidence," attached with the highly prejudicial
Gang Evidence, obscured the fact that Stephon Simpson never
had a conversation nor did he hear a conversation in relation
to Jason Coleman's alleged penal Interest Statement. (Refer to page
B-E of this ground.)



During closing arguments the prosecutor never mentioned "Six Months" after Preston Brumfield died, Stephon Simpson heard Jason Coleman incriminate himself and petitioner. The prosecutor instead focused on the prejudical evidence to convict petitioner. (RT 12 page 1833) also (RT 11 pages 1690, 1659).

In U.S. v Fernandez 172 F.Supp (C.D.(Cal) 2001)

It sans "His statements to Rochin include his own participation in the murders, particularly odd if he knew that Rochin was a snitch."

In petitioners case, it would be particularly odd for an alleged gang member to beat someone up for being a snitch, and turn right around a year later and confess to the snitch; "Hey me and the same guy who beat you up for being a snitch, just commited murder.

Aside from the fact that Stephen Simpson isn't a codefendant, these issues are Relevant.

In People v Schmaus 109 Cal. App 4th (2 dist. 2003), Arce, a convicted criminal, was in custody, he made his statements to authorities; he had a hostile relationship with Schmaus at the time, Arce had a motive to lie; and there was evidence that he was capable of lying. Arce when he testified, failed to authenticate the tape, and he testified he couldn't remember the schmaus statement. Because of the evidence that undermines the reliability of Arces statement about what scmaus said, schmaus' statement doesn't posses the necessary particularized guarantee of Trustworthiness, sufficient to satisfy the confrontation clauses

residual admissibility test. ▷Lilly@Virginia (u.s.Va. 1999), supra.

▷Information received from sources who are themselves the focus of pending criminal charges or investigations is inherently suspect. All familiar with law enforcement know that the tips they provide may reflect their vulnerability to "police pressure" or may involve "revenge," braggadocio, self-exculpation or the hope of compensation. ▷U.S.@Harris, supra

▷House @Bell, 126 S.Ct 2064 (2006), ▷Justice O'Conner described in her concurring opinion; Nor was the confession parker and Letner described induced under pressure of interrogation. The confession evidence here involves an alleged spontaneous statement recounted by two eyewitnesses with no evident motive to lie. For this reason it has more probative value than for example, incriminating testimony from inmates, suspects, or friends or relations of the accused.

▷By the evidence petitioner has shown, it is clear that Stephon Simpsons reliability is at issue. To be reliable is to rely on, to trust, and depend on. For the courts to rely on perjured testimony and a motivation to falsify evidence, would be a Miscarriage of Justice. To believe, hope or put trust in the testimony of Stephon Simpson in order to establish the requirements that need to be met in order to satisfy petitioners 6th Amendment right to confront his accuser, would be a mockery of Justice.

(P)

1  ▷The right to confront and cross-examine is primarily a

2  functional right *that promotes "reliability" in criminal trials.*

3  ▷Lee ⓥ Illinois (U.S. (Ill) 1986) S.Ct 2056, 496 U.S. 530.

4

5  ▷While the jury is the final arbiter of whether the relator

6  is telling the truth, given that the particularized guarantee

7  of Trustworthiness analysis is in effect, an exception to

8  what would otherwise be the result under the

9  Confrontation Clause, it should be narrowly construed

10  to protect the accused's Constitutional rights; U.S. ⓥ

11  Fernandez (2001), supra.

12          ▷ The supreme Court hasn't addressed

13  specifally the admissibility of a statement against

14  Interest made by Coconspirator or accomplice in a

15  private setting, rather in a custodial setting to

16  law Enforcement personnel. ▷U.S. ⓥ Taylor, 328 F.Supp. 2d (N.D. (Ind) 2004)

17          ▷In addition, nothing in Lilly prevents

18  the courts from considering the credibility of the relator,

19  also Rochin had access to the Government's discovery

20  at MDC and thus saw other evidence and reports

21  before offering his own ▷ U.S. ⓥ Fernandez 192 (C.D. Cal, 2001),

22  Supra.

23

24      ▷In comparison, petitioner argues that Jason Colemans

25  alleged penal Interest statement that was recounted by

26  Stephen Simpson, consisted of hearsay rumors that were

27  floating around the city of Santa Monica over a year

28  prior to Mr Simpsons interview at the Santa Monica Police Station



on October 1, 2009, (Refer to page C of this ground). ▷The contents in which the Statement contains.
▷See also; (RT6 page 836) ▷ Mr Simpson says under oath, "he heard people were involved, but he didn't hear any names, and he never heard Coleman say anything about burning a wallet.

▷ The California Supreme Court acknowledged that the probative value of hearsay evidence decreases with each level of hearsay, "▷People ⓥ Zapien 4 Cal.4th, 929 (Cal. 1993) Quoted from → People ⓥ Schmaus, 109 Cal. App. 4th (2003), supra

▷In determining whether habeas relief must be granted for Erroneous Admission of hearsay and confrontation Clause violation, standard is whether error had substantial and injurious effect or influence in determining jurys verdict, rather than whether error was harmless beyond a reasonable doubt; U.S.C.A. Const. Amend 14 ▷ 28 U.S.C.A § 2111, 2254 ▷Brecht ⓥ Abrahamson, 507 U.S. 619 (U.S. (Wis) 1993). ▷Burden remains on the state to show the error was harmless, they only need to show that the error didn't have a substantial and injurious effect on the jurys decision, See also▷ Fry ⓥ Pliler, 551 U.S. 112 (2007) Byrd ⓥ Lewis (9th Cir. 2009), supra.
         ▷Stephon Simpsons alleged overhearing of Jason Colemans penal Interest Statement was fabricated and coerced. From July 4th, 2008 until January 7th, 2009 Simpson was in a Lockdown Rehabilitation Center in

Ⓡ

San Fernando Valley. ▷ Peoples Exhibit #36 which was the alleged statement Mr Simpson wrote out or Detective Henry wrote out, was the only evidence that could be used in any court of criminal action to convict petitioner of assault by means likely to produce Great Bodily Injury. At most Jason Rossels testimony about burning a wallet was maybe accessory after the fact. Without Simpsons unreliable overhearing of Jason Colemans alleged Penal Interest Statement, the government will fail it's burden of proof to convict petitioner of the underlying offense. ▷ It is well known that mere presence at the scene of a crime or merely knowing a crime was being committed isn't sufficient conduct to find petitioner aided and abetted. ▷ U.S. @ Penagos, 823 F. 2d 346 (9th Cir. 1989) also; U.S. @ Gonzales, 121 F. 3d 928 (C.A. 5 (Tex) 1997). =

▷ Given the statement was presented to the jury through Statement's related from Stephon Simpson and the circumstantial evidence in this case isn't overwhelming to prove petitioner assaulted Preston Brumfield, the government cannot say beyond a reasonable doubt such a damaging statement had no probable impact on the minds of the jury, and was therefore harmless error, ▷ U.S. @ Hill, 901 F. 2d 880 (10th Cir. 1990)

▷ When the governments proof relies primarily on circumstantial evidence, trial errors tend to acquire greater significance. It takes less to tip the scales. The possibility in this close CASE is strong enough to require reversal and remand for new trial.
▷ U.S. @ Detrich, 865 F. 2d. 17 (2nd Cir) 1988

# Conclusion:

▷ Unless court of Appeals can confidently say that on the whole record, verdict would have been the same, without Bruton Error arising from admission of non-testifying codefendants confession, defendant should be granted new trial ▷ U.S.C.A. Const. Amend. 6 ⌉ ▷ U.S. ⊘ Peterson 140 F. 3d 819 (C.A. 9 (Cal) 1998).

▷ In petitioners case Government witnesses Jason Rossels custodial interrogation "was recorded" at the Santa Monica Police Department on July 4th, 2008 (Refer to CT 2 page 120). Margarita Jones' Interview at the Santa Monica Police Department on August 8, 2008 "was recorded" (Refer to CT 1 page 0091). Maryann Hollaway's Interview at the Santa Monica Police Department on October 3, 2009 "was recorded." - Refer to (CT 2 page 00102) ▷ Stephen Simpsons Interrogation at the Santa Monica Police Department on Oct 1, 2009 "wasn't Recorded". (Refer to page G of this ground.) ▷ It would be miscarriage of Justice for jurys guilty verdict to stand in petitioners criminal prosecution for Assault by means likely to cause great bodily injury, there-by making it appropriate, in the interest of Justice, that petitioner be granted a new trial, the verdict rest predominately on, to convict petitioner, the testimony of Stephon Simpson who collectively presented a narrative that was greatly undermined by competent and unimpeached evidence in record, namely the testimony of individuals who were connected to victim, or lived in surrounding neighborhood. ▷ U.S. ⊘ Lewis 850 F. Supp. 2d 709 (N.D. Ohio, 2012) ▷ 18 U.S.C.A. § 844(i) ▷ Fed Rules Cr. Proc, Rule 33 18 U.S.C.A.

Ⓣ

▷ Hurd @ People - 25 Mich. 405 ; The acquittal of a guilty person is truly a miscarriage of Justice, but the conviction of an innocent person through relaxation of those fundamental legal principles such as the one with which we are here concerned, would be a tragedy ▷ Quoted from ; ]

▷ People @ Flores. 58 Cal. App. 764 (Cal. App 2 dist (1943).

▷ Petitioner hereby request in the interest of Justice to consider and Reverse this Conviction. Thank You

Respectfully submitted

Petitioner ~    Jason Anthony Hurtado # AG9310

_Jason A. Hurtado_

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

NOVEMBER 19, 2013

Refer to petitioners exhibit #B herein, to show proof of Reasonable doubt.

Ⓤ

# EXHIBIT COVER PAGE



EXHIBIT

Description of this Exhibit: Letter from Appellet Lawyer

Case No. B228221 c/w B233787

People v. Jason Eddie Coleman et al.,
                    Defendants and Appellants

Number of pages to this Exhibit_____Three____ pages.

JURISDICTION: (Check only one)

☐   Municipal Court
☒   Superior Court
☐   Appellate Court
☐   State Supreme Court
☐   United States District Court
☐   State Circuit Court
☐   United States Supreme Court
☐   Grand Jury

*David Goodwin*
*Attorney at Law*
*P.O. Box 93579*
*Los Angeles, CA 90093-0579*
*(323) 666-9960*

December 9, 2012

Jason Anthony Hurtado AG9310
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA 95532



Dear Mr. Hurtado,

Please find enclosed a copy of the Petition for review filed on behalf of Mr.
Coleman by Mr. Stanely.  We are joined in those issues, so if the court accepts
review for Mr. Hurtado, it should accept review for you.

Also, I would like to take this time to respond to your last letter.  Please excuse me
if I do not respond to every aspect that you mentioned, but you raised so many
side aspects that I really can't cover everyone.

First, you have a procedural problem.  At the time of the objection, Mr. Creary
said the statement did not really affect you, but he joined the objection.  (See 5RT
526.)  This creates problems as to whether he properly joined.

I don't know if you heard of the recent Rutterschmidt case from the California
Supreme Court ruling on hearsay and the Crawford line of cases.  In the trial court,
the attorney for Rutterschmidt did not object.  In the Court of Appeal, the court
said that Rutterschmidt waived the issue by failing to object properly and therefore
only allowed the co-defendant (Golay) to raise the issue.  The Supreme Court
refused to reverse that aspect of the ruling and considered the case only as to
Golay.  (They keep the name "People v. Rutterschmidt" even though she was no
longer a party because that was the name of the case when it started.
Rutterschmidt was my client, so my name ended up in the Supreme Court opinion,
even though I was not involved in the case anymore.)

The reason I mention this is the fact that your attorney had a "half-assed" joinder
probably prevents you from raising the issue. (Excuse my slang, but that's kind of
what he did, saying it didn't really affect you, but he joined anyway.)

It is theoretically possible to say he should have raised it and it was IAC not to, but
that would require a showing that it was "unreasonable" not to raise the issue in a

Jason Anthony Hurtado
December 9, 2012
Page 2

better way.  Considering the general weakness of the issue, it is hard to reach that opinion.

In any event, even on the merits the issue has problems.

In general terms, in understanding hearsay the first aspect that you have to address is whether the statement qualifies as an exception to the hearsay rule.  At this stage, I am only talking about the requirements in the definitions of the various hearsay exceptions, and I am not considering the "reliability factor," which I will discuss later.

In this case, I think it is pretty clear that the statement qualifies under those factors as declarations against interest and statements of conspirators.  That leaves the reliability aspect.

(Don't get distracted by Federal Rules. They are secondary authority, at best.  The only binding federal authority is the U.S. Supreme Court.

Be aware of the fact that the result in Dutton is against you. It is a nice rule to quote, but the actual holding hurts you because of way the court balanced the issue. If you look at how the court balanced the issue on page 89 of the U.S. Reports or 219 of the Supreme Court Reporter it is hard to argue those factors were prejudicial in your case.

*Who's the Unreliable Person, and why?*

It is true that in this case the declarant was not a reliable person, but that is very often the case in criminal trials.  All, or the vast majority of the factors you mentioned were brought to the jury's attention and the jury is presumed to weigh those factors properly.

The fact that the same judge presided over the Greenberger case has no bearing. In fact, in so far as the court affirmed the judgment in that case, it just shows that Judge Rappe had correctly decided this complicated issue in the past.  Again, Greenberger was decided against your position so ultimately the reasoning isn't really helpful for you.

(A word of advice – if you want to do more research, look for cases where they reversed the conviction on these grounds and then apply those factors to your case.)

*Key*

Jason Anthony Hurtado
December 9, 2012
Page 3

It is true that you have a constitutional right of cross-examination.  But hearsay exceptions are excluded from that right.  If your lawyer said that Greenberger overrules that right, he was not really accurate.  A state court of appeal cannot "overrule" a constitutional right.  However, some hearsay statements have always been excluded from the constitutional right of confrontation.  Thus, when the constitution was adopted and since then in all 50 states, certain forms of hearsay were excluded from the scope of cross-examination.

The same thing can be said of every other hearsay exception from dying declarations to spontaneous statements.  If it is a recognized hearsay exception, the right of confrontation may not prohibit it.

Additionally, you should be aware of the fact that most hearsay exceptions have a certain degree of reliability built into them.  For example, statements against interest are considered to be reliable because it is assumed that people would not make a statement against their better interest unless it was true.

Finally, under the Crawford line of cases, hearsay violates the Confrontation Clause when it is "testimonial."  Although the courts are still refining that standard, basically, it means if the statement was intended to be used in litigation when it was made, it is testimonial and confrontation issues arise.

For example, reports concerning bodily fluids prepared in conjunction with suspected crimes have been regarded as testimonial.  (See *City of Las Vegas v. Walsh*, 124 P.3d 203.)

However, statements that were not intended to be "testimonial," such as excited utterances or declarations against interest, do not violate the confrontation clause.

It is for these reasons that I did not think the hearsay issue would be helpful.

I hope this answers your questions.

Sincerely,

David H. Goodwin

# EXHIBIT COVER PAGE 

EXHIBIT

Description of this Exhibit: Grounds for Disclosure of Juror Contact Info.

Case No. B228221 c/w B233787 -/

People v. Jason Eddie Coleman et al.,
Defendants and Appellants

Number of pages to this Exhibit_____Three_____ pages.

JURISDICTION:  (Check only one)

☐   Municipal Court
☒   Superior Court
☐   Appellate Court
☐   State Supreme Court
☐   United States District Court
☐   State Circuit Court
☐   United States Supreme Court
☐   Grand Jury

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT, DIVISION TWO

**THE PEOPLE OF THE STATE OF CALIFORNIA,**

Plaintiff and Respondent,

v.

**JASON COLEMAN, GWINDON MURPHY (c/d),**

Defendants and Appellants.

Case No. B228221

Los Angeles County Superior Court, Case No. SA072508
The Honorable Curtis B. Rappe, Judge

**RESPONDENT'S BRIEF**

KAMALA D. HARRIS
Attorney General of California
DANE R. GILLETTE
Chief Assistant Attorney General
LANCE E. WINTERS
Senior Assistant Attorney General
JAMES WILLIAM BILDERBACK II
Supervising Deputy Attorney General
MARC A. KOHM
Deputy Attorney General
State Bar No. 208821
   300 South Spring Street, Suite 1702
   Los Angeles, CA  90013
   Telephone:  (213) 897-4926
   Fax:  (213) 897-6496
   E-mail:  Marc.Kohm@doj.ca.gov
*Attorneys for Respondent*

## VI. AS DEFENSE COUNSEL ADMITTED BELOW, HE FAILED TO ALLEGE ADEQUATE GROUNDS FOR DISCLOSURE OF JUROR CONTACT INFORMATION

Appellant Coleman contends that the trial court violated his federal constitutional rights in failing to disclose juror contact information so that he could explore the possibility that a juror committed misconduct during deliberations. (CAOB 92-99.) Appellant Hurtado joins in the claim. (HAOB 28-31.) This claim is frivolous. Appellant Coleman's trial attorney acknowledged below that he had failed to present sufficient evidence supporting disclosure of the information.

Pursuant to Code of Civil Procedure section 237, subdivision (a)(2), a trial court's record of jurors' personal identifying information is sealed once the verdict is recorded. In order to obtained that information, a defendant must file a petition "supported by a declaration that includes facts sufficient to establish good cause for the release of the jurors personal identifying information." (Code Civ. Proc., § 237, subd. (b).)  A trial court's ruling that no good cause was shown is reviewed for abuse of discretion. (*People v. Avila* (2006) 38 Cal.4th 491, 604; *People v. Carrasco* (2008) 163 Cal.App.4th 978, 991.)

After the verdict, appellant Coleman filed a motion requesting juror contact information. The motion was supported by a declaration from trial counsel in which he asserted:

> I would like to inquire of the one juror who voted not guilty on codefendant [Samuel Murphy] if s/he was pressured in changing his/her vote or whether there was tacit agreement that if the juror change[d] her/his vote of not guilty regarding Jason Coleman and Jason Hurtado, the other jurors would then state they were hopelessly deadlock[ed] regarding co-defendant, Sammy Murphy in order that the jurors could end their deliberations.

(3CT 629.)  The sole factual support for the motion was an email the prosecutor sent defense counsel in which she summarized a conversation with a juror:

> Following our verdict, one of the jurors from the trial contacted me by telephone.  The juror explained to me that as to Samuel Murphy, the jury was hung 11 to 1 for guilt.  The one juror who voted not guilty for Samuel Murphy initially voted not guilty for defendants Coleman and Hurtado as well.  The juror explained to me that this juror appeared to have some sort of bias which the juror would not discuss, and was fairly quiet during deliberations.  When the other jurors attempted to inquire as whether there was some sort of bias or incident in the juror's past, the juror responded that, "It's none of your business."  This juror eventually agreed with the other jurors as to the guilt of Coleman and Hurtado, but would not be convinced of Samuel Murphy's guilt."

(3CT 649.)

During the hearing on the motion, counsel for appellant Coleman repeatedly admitted that he had failed to allege valid grounds for release of the juror's contact information, but asked the court to bend the rules to allow his investigation.  (15CRT 1981-1982.)[25]  The trial court denied the motion as there was no evidence of misconduct.  (15CRT 1984-1985.)

In short, and particularly in light of defense counsel's admission that he had failed to allege valid grounds for granting the motion, the trial court acted within its discretion in denying the motion.  There was no evidence of misconduct, and the relevant rules are specifically designed to prevent attorneys from obtaining juror contact information to go on fishing expeditions.

Finally, any alleged error was harmless beyond a reasonable doubt because appellant has made no showing that juror misconduct occurred.

---

[25] Counsel for appellant Hurtado joined in the motion.  (15CRT 1983.)

_Jason Hurtado_
Petitioner

_DaviD. B. Long_
Respondent(s)

**DECLARATION IN SUPPORT
OF REQUEST
TO PROCEED
IN FORMA PAUPERIS**

I, _Jason Hurtado_ , declare that I am the petitioner in the above entitled case; that in support of my motion to proceed without being required to prepay fees, costs or give security therefor, I state that because of my poverty I am unable to pay the costs of said proceeding or to give security therefor; that I believe I am entitled to relief.

1. Are you presently employed?  ☒ Yes   ☒ No

   a. If the answer is yes, state the amount of your salary or wages per month, and give the name and address of your employer.  _N/A_

   b. If the answer is no, state the date of last employment and the amount of the salary and wages per month which you received.  _N/A_

2. Have you received, within the past twelve months, any money from any of the following sources?
   a. Business, profession or form of self-employment?  ☐ Yes  ☒ No
   b. Rent payments, interest or dividends?  ☐ Yes  ☒ No
   c. Pensions, annuities or life insurance payments?  ☐ Yes  ☒ No
   d. Gifts or inheritances?  ☐ Yes  ☒ No
   e. Any other sources?  ☐ Yes  ☒ No

   If the answer to any of the above is yes, describe each source of money and state the amount received from each during the past twelve months:  _N/A_

3. Do you own any cash, or do you have money in a checking or savings account?  *(Include any funds in prison accounts)*
   ☐ Yes  ☒ No

If the answer is yes, state the total value of the items owned: _____ *N/A* _____

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property? *(Excluding ordinary household furnishings and clothing)* ☐ Yes ☒ No

If the answer is yes, describe the property and state its approximate value: _____ *N/A* _____

5. List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support: _____ *N/A* _____

I, declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.
Executed on _____ 10 — ~2014 _____
    *Date*                    *Signature of Petitioner*

## CERTIFICATE

I hereby certify that the Petitioner herein has the sum of $ _____ on account to his credit at the _____ institution where he is confined. I further certify that Petitioner likewise has the following securities to his credit according to the records of said institution: _____

_____

_____

_____ *Date* _____                 _____
                                        *Authorized Officer of Institution/Title of Officer*



# CERTIFICATE OF FUNDS
## IN
### PRISONER'S ACCOUNT

I certify that attached hereto is a true and correct copy the prisoner's trust account statement showing transactions of;

**HURTADO, JASON  CDC #AG9310** for the last six months at

**IRONWOOD STATE PRISON**   where he is confined.

I further certify that the average deposits each month to this prisoner's trust account for the most recent 6-month period were $0.00, and the average balance in the prisoner's trust account for the most recent 6-month period was $0.00.

Dated October 7, 2014

_____
Authorized Officer of the Institution

Institution: ISP

## Inmate Statement Report

| Start Date: | 4/1/2014 | Revalidation Cycle: | All |
|---|---|---|---|
| End Date: | 9/30/2014 | Housing Unit: | All |
| Inmate/Group#: | AG9310 | | |

THE WITHIN INSTRUMENT IS A CORRECT
COPY OF THE TRUST ACCOUNT MAINTAINED
BY THIS OFFICE.
ATTEST:
CALIFORNIA DEPARTMENT OF CORRECTIONS
BY _____
TRUST OFFICE

## Inmate Statement Report

| CDCR# | Inmate/Group Name | Institution | Unit | Cell/Bed |
|-------|-------------------|-------------|------|----------|
| AG9310 | HURTADO, JASON | ISP | D  004 2 | 249001 |

**Current Available Balance:**   $0.00

### Transaction List

| Transaction Date | Institution | Transaction Type | Source Doc# | Receipt#/Check# | Amount | Account Balance |
|------------------|-------------|------------------|-------------|-----------------|--------|-----------------|
| **No information was found for the given criteria.** | | | | | | |

### Encumbrance List

| Encumbrance Type | Transaction Date | Amount |
|------------------|------------------|--------|
| **No information was found for the given criteria.** | | |

### Obligation List

| Obligation Type | Court Case# | Original Owed Balance | Sum of Tx for Date Range for Oblg | Current Balance |
|-----------------|-------------|-----------------------|-----------------------------------|-----------------|
| **No information was found for the given criteria.** | | | | |

### Restitution List

| Restitution | Court Case# | Status | Original Owed Balance | Interest Accrued | Sum of Tx for Date Range for Oblg | Current Balance |
|-------------|-------------|--------|-----------------------|------------------|-----------------------------------|-----------------|
| RESTITUTION FINE | SA072508 | Active | $5,000.00 | $0.00 | $0.00 | $5,000.00 |
| DIRECT ORDER | SA072508 | Active | $7,674.60 | $0.00 | $0.00 | $7,558.17 |
| RESTITUTION FINE | SA068235 | Active | $200.00 | $0.00 | $0.00 | $200.00 |



THE WITHIN INSTRUMENT IS A CORRECT
COPY OF THE TRUST ACCOUNT MAINTAINED
BY THIS OFFICE.
ATTEST: *October 7, 2014*
A. Seyle
CALIFORNIA DEPARTMENT OF CORRECTIONS
BY
TRUST OFFICE

If you are a **prisoner** you **must** have an officer from your institution provide this official certificate as to the amount of money in your prison account. There are no exceptions to this requirement.

## PRISON CERTIFICATE
### (Incarcerated applicants only)
### (To be completed by the institution of incarceration)

I certify that the applicant ___Jason    Hurtado___

(NAME OF INMATE)

___AG9310___

(INMATE'S CDC NUMBER)

has the sum of $_____0_____ on account to his/her credit at _____

___IronWood State Prison    /D-Facility___

(NAME OF INSTITUTION)

I further certify that the applicant has the following securities _____

to his/her credit according to the records of the aforementioned institution. I further certify that during

the past six months the applicant's *average monthly balance* was $ ___0.00___

and the *average monthly deposits* to the applicant's account was $ ___0.00___

ALL PRISONERS *MUST* ATTACH A CERTIFIED COPY OF THEIR TRUST ACCOUNT
STATEMENT SHOWING TRANSACTIONS FOR THE SIX-MONTH PERIOD
IMMEDIATELY PRECEDING THE FILING OF THE COMPLAINT PER 28 U.S.C. § 1915(a)(2).

___10/7/14___

DATE

_____

SIGNATURE OF AUTHORIZED OFFICER OF INSTITUTION

___Sandra Smith___

OFFICER'S FULL NAME (PRINTED)

___Sr Acct Officer Sup___

OFFICER'S TITLE/RANK

Jason Hurtado #K69370
P.O. Box
Tamwood
Blythe, CA 92226

2254



RECEIVED
CLERK, U.S. DISTRICT COURT

OCT 1 5 2014

CENTRAL DISTRICT OF CALIFORNIA
BY: ____ DEPUTY

United States Courthouse Central District
of California
312 North Spring Street
Los Angeles, CA 90012



UNITED STATES POSTAGE
02 1A
000462498 OCT 09 2014
$ 03.080
PITNEY BOWES
MAILED FROM ZIP CODE 92225



10-8-14

LEGAL ONLY